**DR D Constr. Corp. v Littles**

2025 NY Slip Op 30197(U)

January 14, 2025

Supreme Court, Kings County

Docket Number: Index No. 354/19

Judge: Wavny Toussaint

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 70 of the Supreme Court of
the State of New York, held in and for the County
of Kings, at the Courthouse, at 360 Adams Street,
Brooklyn, New York, on the 14th day of January,
2025.

P R E S E N T:

HON. WAVNY TOUSSAINT,

                                    Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DR D CONSTRUCTION CORP.,

                    Plaintiff,                          Index No. 354/19

        - against -                                    **DECISION AND ORDER**

MONICA JOHN LITTLES,

                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

The following e-filed papers read herein:          NYSCEF Doc Nos.

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____          64-84
Opposing Affidavits (Affirmations)_____          87-88
Reply Affidavits (Affirmations)_____          91-98

Upon the foregoing papers in this action, pursuant to RPAPL Article 9, for partition

and sale of the property at 951 Albany Avenue in Brooklyn (Block 4895, Lot 54), a two-

family residence (Property), plaintiff DR D Construction, Corp. (DR or Plaintiff) moves

(Seq. 05) for an order: (1) granting it summary judgment directing the partition and sale of

the Property, pursuant to CPLR § 3212 (e); (2) appointing a referee for a "complete

accounting of the revenues, expenses, rental income, and management of the Subject

Property . . ."; and (3) striking defendant Monica John Littles' (Defendant or Littles) affirmative defenses and counterclaim (NYSCEF Doc No. 64).

## Background

On January 17, 2019, Plaintiff commenced this action for partition and sale of the Property. On September 29, 2022, Plaintiff e-filed an amended complaint alleging that "Plaintiff and Defendant are tenants in common of the Premises, each having a 50% interest in the Premises" (NYSCEF Doc No. 46 at ¶ 4). The amended complaint alleges that "Plaintiff obtained its half interest in the Premises by deed from Jean Bennett dated August 1, 2018 . . ." and "Defendant obtained her half interest in the Premises by deed from Jean Bennett dated January 11, 2007 . . ." (*id.* at ¶¶ 5 and 6). The amended complaint alleges that the Premises, a two-family residence, "is so situated that division or partition thereof among the parties entitled thereto, according to their respective rights and interests, cannot be had without great prejudice to the owners of the premises" (*id.* at ¶¶ 11-12).

On September 30, 2022, Defendant Littles e-filed her answer to the amended complaint, denied the material allegations therein and asserted affirmative defenses, including: (1) "Plaintiff has no interest in the subject premises as its purported interest was obtained . . . by fraud"; (2) "Plaintiff's predecessor, Jean Bennett, obtained a purported interest in the subject premises through fraudulent means"; and (3) "Plaintiff's purchase of a fifty percent interest in the subject premises was for inadequate consideration [and] any such deed transfer to Plaintiff should be voided *ab initio*" (NYSCEF Doc No. 48 at ¶¶ 5, 8

2

and 9). Additionally, Defendant asserted a counterclaim for attorneys' fees and costs because Plaintiff DR allegedly commenced this action in bad faith (*id.* at ¶¶ 10-12).

On September 30, 2022, Plaintiff e-filed its response to Defendant's counterclaim (NYSCEF Doc No. 49). On April 3, 2024, Plaintiff filed a note of issue and certificate of readiness (NYSCEF Doc No. 63).

### *Plaintiff's Summary Judgment Motion*

On May 15, 2024, DR moved for an order granting it summary judgment directing the partition and sale of the Property, appointing a referee to conduct an accounting of the Property's revenues and expenses and striking Defendant's affirmative defenses and counterclaim (NYSCEF Doc No. 64). DR submits an affidavit from Nardeva Ramparshad (Ramparshad), its president, who attests that:

> "Plaintiff holds 50% of the title to the Subject Property, which it purchased on August 1, 2018, from Jean Bennet ('Ms. Bennett') (see **Exhibit N**),[1] and Ms. Littles holds the other 50%.
>
> "As Ms. Littles opted not to respond to the attempt of amicable resolution by way of letter sent to Ms. Littles by USPS-certified mail on November 4, 2018 (see NYSCEF Doc. No. 15), Plaintiff had no choice but to commence this action on January 17, 2019 . . ." (NYSCEF Doc No. 67 at ¶¶ 2-3).

Ramparshad recited the procedural history of this action, including DR's two successive motions seeking default judgments against Defendant Littles and "deficiencies" in her responses to DR's discovery demands (*id.* at ¶¶ 4-13).

---

[1] Exhibit N is the August 1, 2018 quitclaim deed by which Jean Bennett transferred her 50% ownership interest in the Premises to Plaintiff DR (*see* NYSCEF Doc No. 81).

3

Ramparshad references Defendant Littles' May 11, 2023 deposition and attests that:

> "[d]uring the deposition Ms. Littles primarily confirmed that she originally purchased the Subject Property on August 30, 2002 (see **Exhibit C**, P 10 L 6-13),[2] which deed was recorded on September 25, 2002 (see **Exhibit D**),[3] and on the same August 30, 2002, Ms. Littles obtained the purchase money mortgage from Wells Fargo Home Mortgage Inc. in the amount of $301,250.00, which mortgage recorded on September 25, 2002, with the Office of the City Register for the City of New York (see **Exhibit E**).[4] At the deposition, Ms. Littles could not recall if she had made any downpayment towards the purchase of the Subject Property (see **Exhibit C**, P 39, L 6-13)"[5] (NYSCEF Doc No. 67 at ¶ 15 [emphasis in original]).

Ramparshad attests that Littles refinanced the Premises three times in the next three years:

(1) on October 16, 2003, Littles obtained two mortgages for $276,000.00 and $69,000.00;

(2) on December 22, 2004, Littles obtained a mortgage in the principal amount of $364,000.00; and (3) on April 27, 2005, Littles obtained another mortgage for $400,000.00 (*id.* at ¶¶ 16-18). Ramparshad references the mortgages in the record,[6] and specifically notes that Littles confirmed these facts during her deposition (*id.*).[7]

Ramparshad explains that Littles defaulted on her $400,000.00 mortgage according to the pleadings in the foreclosure action, *U.S. Bank v. Monica Johnlittles*, Kings County, index No. 39251/06 (*id.* at ¶ 19). Ramparshad attests that Ms. Bennett became involved as a straw buyer to save the Premises from foreclosure:

---

[2] NYSCEF Doc No. 70 at 10, lines 6-13.

[3] NYSCEF Doc No. 71.

[4] NYSCEF Doc No. 72.

[5] NYSCEF Doc No. 70 at 39, lines 6-13

[6] NYSCEF Doc Nos. 73, 74 and 75.

[7] NYSCEF Doc No. 70 at 45, lines 15-17; at 50, lines 11-13; at 51, lines 15-25; at 52, lines 2-8.

4

[* 4]

"[u]nable to further refinance and now subject to foreclosure action, Ms. Littles recruited Ms. Bennett, with whom she worked together at the Sea Crest Healthcare Center, to purchase the Subject Property and take two mortgages to repay the one subject to foreclosure action, in exchange for $10,000.00, as Ms. Littles testified at [her] deposition (see **Exhibit C**, P 89, L12-25, P 90, L 2).[8]

"The Deed from Ms. Littles to Ms. Bennet dated January 10, 2007, was recorded on January 26, 2007 as CRFN #2007012200887001, with selling price of $530,000.

"The Deed from Ms. Bennet to Ms. Littles and Ms. Bennet, as equal 50% owners, dated January 11, 2007, was recorded on January 26, 2007, as CRFN # 2007021600701001 with no stated consideration paid . . .

"Contrary to Ms. Littles's Amended Answer . . . during the deposition, Ms. Littles confirmed that the signature on the Deed dated January 10, 2007, transferring the Subject Property to Ms. Bennett is her signature . . ."[9] (*id.* at ¶¶ 20-23 [emphasis in original]).

Ramparshad attests that on January 10, 2007, Bennett took out two mortgages encumbering the Premises for $424,000 and $106,000.00 (*id.* at ¶ 24 [referencing the mortgages in the record at NYSCEF Doc Nos. 76 and 77]).

Ramparshad asserts that Littles "admitted" to her foreclosure rescue scheme at her deposition, by which Littles transferred the Premises to Bennett in order to mortgage the Premises, after which Bennett was supposed to transfer the Premises back to Littles (*id.* at ¶ 25 [referencing NYSCEF Doc No. 70 at 60, lines 8-25]). Ramparshad asserts that "[f]ollowing the sale of the Subject Property to Ms. Bennett, Defendant remained in sole

---

[8] NYSCEF Doc No. 70 at 89, lines 12-25; at 90, line 2.
[9] NYSCEF Doc No. 70 at 17, lines 14-23; at 17, lines 20-25.

possession on the Subject Property, which is a two-family home . . ." and Littles admitted at her deposition that she "has not been paying anything . . . while she rents out the second unit of the Subject Property" (*id.* at ¶¶ 26-27 [referencing NYSCEF Doc No. 70 at 60, lines 9-25; at 62, lines 23-25; at 63-66]).

Ramparshad attests that, "[a]s a result of Ms. Littles's failure to pay Ms. Bennett's mortgages, a foreclosure action was commenced in Kings County Supreme Court by filing Summons, Complaint in the matter *Bank of America, N.A. v. Jean Bennett*, Index No. 5352/2009 . . ." and subsequently, "[o]n January 1, 2011, Ms. Bennett sued Ms. Littles in Kings County Supreme Court . . ." alleging that Littles defrauded her (*id.* at ¶¶ 28 and 30). Ramparshad attests that "Ms. Bennett ultimately had no choice but to abandon her action as she lacked financial ability to continue to prosecute" (*id.* at ¶ 32). Ramparshad attests that Bennett transferred her 50% interest in the Premises to Plaintiff DR by an August 1, 2018 deed, making DR the record owner of 50% of the Premises (*id.* at ¶ 33). Ramparshad further attests as follows:

> "Since i[n] the instant action any potential triable issues were resolved by the documentary evidence and M[s]. Littles deposition, it is respectfully submitted that the Plaintiff had established its right to possession of the Subject Property.
>
> "The Subject Property, being a two-family home (see **Exhibit K**),[10] and as reflected on the photograph of the front of the Subject Property, it has only one front entrance door (see **Exhibit O**),[11] and due to the nature of the Subject Property and its location it cannot be partitioned without great prejudice to the parties" (*id.* at ¶¶ 34-35 [emphasis in original]).

---

[10] NYSCEF Doc No. 78.
[11] NYSCEF Doc No. 82.

**6**

Plaintiff also submits an affidavit from Jean Bennett, who attests that:

> "I purchased the Subject Premises from Monica John Littles on January 10, 2007, whom I knew through work at Sea Crest Nursing and Rehabilitation Center, where we worked as nurse aids. We were also friendly with John Littles as we are both first-generation immigrants from [the Caribbean] and had much in common. Back in 2006, on multiple occasions, John Littles complained to me that she was about to lose her home if she couldn't find a way to refinance, which she could not because her credit was ruined.

> "John Littles was my friend, and it was hard for me to see her upset and worried, which I would express to her, in response to which she asked me to help her save her home from being foreclosed. John Littles explained that I would have to put the Subject Property to my name and take a mortgage to my name for a duration of (1) year, after which she would repair her bad credit, refinance, and take the Subject Property off my name.

> \* \* \*

> "Despite her promise, John Littles defaulted on mortgage payments, which resulted in a foreclosure action against me, commenced on March 5, 2009 . . .

> "In October 2009, I, together with John Littles, appeared at the foreclosure settlement conference, where I begged for a 'short sale' so the Subject Property could be sold, taken off my name, and both mortgages fully satisfied. John Littles, however, adamantly refused. She wanted to remain at the Subject Property at my expense and insisted on the loan modification even though she was not the borrower.

> "I realized I was scammed, where John Littles orchestrated a mortgage rescue foreclosure scheme at my expense and at the sacrifice of my good credit. I refused to allow John Littles to take advantage of me again and to continue to harm my credit and my life. I refused to participate in any loan modification" (NYSCEF Doc No. 84 at ¶¶ 2-3, 11-13).

[* 7]

Bennett commenced an action against Littles on January 1, 2011, alleging fraud and seeking to void the last deed to the Premises. Bennet attests that she could no longer pay her attorney to continue with this case, and that on August 1, 2018, she transferred her 50% interest in the title of Subject Property to Dr D Construction Corp, for valuable consideration (*id.* at ¶¶ 18-22).

Plaintiff submits an attorney affirmation reiterating Bennett's version of the "facts" regarding the foreclosure rescue scheme and the procedural history of this action (NYSCEF Doc No. 65 at ¶¶ 1-34). Plaintiff's counsel argues that:

> "[i]n this action, Plaintiff amply established its entitlement to the Summary Judgment directing that the real property be partitioned and sold at public auction by establishing the ownership and right to possession of the Subject Property by producing the Deed dated August 1, 2018, evidencing that Jean Bennet transferred her 50% interest in the title of Subject Property to the Plaintiff, where Plaintiff became and remains the owner of the record of fifty percent (50%) of the Subject Property (see **Exhibit N**)" (*id.* at ¶ 40 [emphasis in original]).

Plaintiff's counsel further argues that "due to the nature of the Subject Property and its location, it cannot be partitioned without great prejudice to the parties" (*id.* at ¶ 42).

Plaintiff's counsel also asserts that the equities favor Plaintiff, and not Littles, "who has no recollection of putting any downpayment towards the purchase of the Subject Property . . . but managed to refinance it three (3) times within less than two (2) years until there was nothing to re-mortgage . . ." and "continues to occupy the Subject Property for over seventeen (17) years since the transaction with Ms. Bennett, has no proof that she paid any property taxes, and admitted not paying any mortgage . . ." (*id.* at ¶ 47). Plaintiff's

8

[* 8]

counsel also asserts that "[i]n light of the parties' dispute as to their respective entitlements to the proceeds from the sale of the property, an accounting is necessary to determine the parties' respective interests in the property" (*id.* at ¶ 50).

Plaintiff's counsel asserts that Defendant's affirmative defenses should be dismissed (*id.* at ¶¶ 51-79). Plaintiff's counsel also asserts that Defendant's sole counterclaim for an award of legal fees should be dismissed on the ground that "attorney's fees may not be awarded absent an agreement between the parties or a statute or court rule which authorizes them" (*id.* at ¶ 80).

### *Defendant's Opposition*

Defendant Littles, in opposition, submits an affidavit attesting that "the plaintiff, whom I have no relation with, is trying to take my home away from me and my family" (NYSCEF Doc No. 87 at ¶ 3). Littles, in direct contrast to Bennett's affidavit testimony, attests that she was the "victim" of the foreclosure rescue scheme perpetrated by Bennett:

> "I was the victim of home equity theft by a former co-worker named Jean Bennett. Ms. Bennett deceived me into giving her, at first, my entire house, and then later when I was concerned, she 'gave' me half of my house back. This was under the guise of helping me re-finance my mortgage to get a lower monthly payment.
>
> "At first, I lived at the Property without incident. However, in 2007, I started having financial problems and was unable to pay the mortgage.
>
> "At that time, Ms. Bennett approached me and told me she, along with her husband and brother in law, could help me out. All I had to do was sign paperwork that would allow me to lower my monthly mortgage payment and keep my house.

9

"I am unfamiliar with real estate matters and legal paperwork. I did not have a lawyer helping me. Ms. Bennett did have a lawyer helping her. I was, unfortunately, very naïve and trusting that Ms. Bennett was trying to help me. It was agreed that she would be paid $10,000.00 for her assistance which I thought to be fair.

"Ms. Bennett's husband and brother-in-law work in real estate and orchestrated this whole scenario [with] Barry Zornberg. Esq. Mr. Zornberg is now disbarred and in prison for operating the exact kinds of scams that were perpetrated on me – home equity theft. As part of his scheme, Zornberg told the owners of 'distressed' properties, such as me, that by 'refinancing' their homes with his associates, they could eventually keep the property. The victims signed over title to their homes to straw buyers who supposedly would get mortgages at more favorable rates, officials said. The victims were promised they would get back their homes after paying rent for a year.

"I am such a victim. Jean Bennett was the straw buyer. The only difference in my case is that it was Bennett, not Zornberg, who approached me with this scheme. It is clear that Ms. Bennett, working with Barry Zornberg, orchestrated this scheme to take my house away from me. I was unaware of any of this and was completely taken advantage of" (*id.* at ¶¶ 4-9).

Littles attests that "Jean Bennett then sold her interests in my property to the plaintiff" for $30,000.00 (*id.* at ¶¶ 10-11).

Littles asserts that the Premises is in foreclosure "which may make this entire partition action moot anyway" and "it is abundantly clear that I was the victim of a scam by Jean Bennett, that the plaintiff is now a participant in that scam, that plaintiff has contributed nothing to this property and that a sale of the property is not appropriate" (*id.* at ¶¶ 17-18). Littles further attests that she reviewed Bennett's affidavit and found it to be

10

"[a] complete fabrication of the events" and that "it was Jean Bennett who concocted this scheme to rob [her] of [her] house" (*id.* at ¶¶ 24-25).

Littles asserts that the Premises, a two-family residence that only shares a common entrance and foyer, can be physically partitioned, rather than sold as a single parcel, and that "if I am forced to, I would give up one apartment but should be allowed to retain the other apartment" (*id.* at ¶¶ 19-20). Littles explains that:

> "[t]he property is a two (2) family house. There is one entrance door that leads to a foyer. The foyer has access to a ground floor apartment and a staircase that leads to a second apartment upstairs. Each apartment has its only bedrooms, bathrooms and kitchen. Nothing is shared other than the front door to the property and the building systems such as water and electricity.
>
> "Plaintiff would have full and private access to the other apartment. Common areas are standard in New York City buildings with multiple units. Sub-meters could easily be installed to determine each unit's usage of utilities. The parties could either create a condominium or act together as a de facto condominium.
>
> "Thus sharing the property is not just entirely possibly but also very feasible. . . ." (*id.* at ¶¶ 21-23).

### Plaintiff's Reply

Plaintiff, in reply, submits an affidavit from Ramparshad, who asserts that Littles "was undeniably very knowledgeable and experienced in the field of mortgages and refinances" and that she sold the Premises to Bennett to avoid foreclosure (NYSCEF Doc No. 92 at ¶¶ 2-3). Ramparshad questions how Littles can claim that she is a victim of home equity theft when "she testified at [her] deposition that Ms. Bennett helped her in exchange for $10,000.00" and the other loan proceeds went to Littles (*id.* at ¶ 4). Ramparshad asserts

11

that "it would defy all logic and commonsense why Ms. Bennett would commit herself to that level of paying two mortgages for someone else's home" (*id.* at ¶ 7). Ramparshad also asserts that:

> "[h]ad Ms. Bennet[t] indeed intended to commit fraud against Ms. Littles, she would not have given 50% of the title back to Ms. Littles but to evict her and have the Subject Property rented for as long as she could, which would have been over 17 years by now.
>
> "**Indeed,** Ms. Littles took advantage of and deceived Ms. Bennet[t], which was specifically discussed in Ms. Bennet[t]'s Affidavit, which Defendant cannot refute. . . ." (*id.* at ¶¶ 8-9).

Rampershad argues that "Littles offers nothing that could support her wish of a way to partition a two-family dwelling, that is only 16 ft wide, erected in 1925 or before that, as a frame, old style construction" and submits the certificate of occupancy for the Premises (*id.* at ¶ 15 [referencing NYSCEF Doc No. 78]). Ramparshad claims that Littles failed to produce any evidence in response to Plaintiff's demand for discovery regarding the Premises, although Plaintiff did not make a discovery motion to obtain such information. Ramparshad notes that Littles' opposing papers "offers no photographs or a floor plan, an opinion of an architect or an engineer, or zoning and parking analyses that would support her claim . . ." that the Premises can be partitioned and converted into two condominium apartments (*id.* at ¶ 16). Without submitting any proof, Ramparshad claims that to do so "the structure would need to be completely demolished, as it does not comply with modern requirements" (*id.* at ¶ 20).

12

## Discussion

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493, 493 [2d Dept 2005]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493, 494 [2d Dept 1989]).

RPAPL § 901 (1) provides that "[a] person holding and in possession of real property as joint tenant or tenant in common . . . may maintain an action for the partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice to the owners." The Second Department has held that "[t]he right to partition is not absolute, however, and while a tenant in common has the right to maintain an action for partition pursuant to RPAPL 901, the remedy is always subject to the equities between the parties" (*Tsoukas v Tsoukas*, 107 AD3d 879, 880 [2d Dept 2013]).

13

Here, summary judgment is not warranted because conflicting fact affidavits from Bennett and Littles raise triable issues regarding the nature of Bennett's ownership interest in the Premises as a straw buyer in a foreclosure rescue scheme and the circumstances surrounding Bennett's transfer of her 50% interest in the Premises to Plaintiff DR. Defendant Littles, who claims that Bennett together with Plaintiff DR perpetrated a fraud, raises triable issues of fact as to whether the equities are in her favor. Additionally, the parties' conflicting submissions and lack of evidence regarding the physical attributes of the Premises, raise triable issues of fact regarding the ability to physically partition the Premises, a two-family residence with two stand-alone apartments that share a front entrance and foyer.

However, Plaintiff has amply demonstrated that Defendant's sole counterclaim for an award of attorneys' fees is subject to dismissal, as a matter of law, since the Second Department has long held that "attorney's fees may not be awarded absent an agreement between the parties or a statute or court rule authorizing them" (*Bloom v Jenasaqua Realty Holding Co.*, 174 AD2d 644, 645 [2d Dept 1991]), and there is no basis for such an award in this action. Accordingly, it is hereby

**ORDERED** that Plaintiff's motion (Seq. 05) is only granted to the extent that Defendant's counterclaim is dismissed; the motion is otherwise denied.

This constitutes the decision and order of the court.

ENTER

_____
J. S.C.
Hon. Wavny Toussaint
J.S.C.

2025 JAN 16 A 9: 33
KINGS COUNTY CLERK
FILED

14